**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

HOWARD BRAUN,

                                                        Case No.:

            Plaintiff,

v.

TD BANK, N.A. and EXPERIAN
INFORMATION SOLUTIONS,
INC., a foreign for-profit corporation,

            Defendant.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, Howard Braun ("Plaintiff"), by and through the undersigned

counsel, and hereby files this *Complaint* against TD Bank, N.A. ("TDB") and EXPERIAN

INFORMATION SOLUTIONS, INC. (hereinafter, "Experian") (hereinafter collectively,

"Defendants").  In support thereof, Plaintiff alleges:

### PRELIMINARY STATEMENT

This is an action for damages for Defendants' violations of the Fair Credit Reporting Act,

15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") for TDB's violations of

the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter,

"FCCPA") and the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*. ("TILA").

### JURISDICTION, VENUE & PARTIES

1.      Jurisdiction and venue for purposes of this action are conferred by Florida

Statutes, 559.77, 15 U.S.C., Section 1640(e), and 15 U.S.C., Section 1681, *et seq*.

2.      At all material times herein, Plaintiff is an individual residing in Pinellas County,

Florida.

1

3.      Defendants are subject to the jurisdiction of this Court as each regularly transacts business in this District, and the events described herein occur in this District.

4.      Venue is proper in this District because the acts described herein occur in this District.

5.      At all material times herein, TDB is a national bank with its principal address at Two Portland Square, Portland, Maine 04112.

6.      At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## FCCPA STATUTORY STRUCTURE

7.      The FCCPA is a state consumer protection statute, modeled after the federal FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  Fla. Stat. §§ 559.55 and 559.77(5).

8.      The FCCPA imposes liability on any creditor/person as well as any debt collector who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. Fla. Stat. § 559.55(5).

9.      Specifically, the FCCPA prohibits unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt

*directly or indirectly* to any person *through any medium*."   Fla. Stat. § 559.55(2) (emphasis added).

10.     For example, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor, and also prohibits a person from communicating directly with a consumer when such person knows the consumer is represented by legal counsel with respect to such debt. *See* Fla. Stat. §§  559.72(7) and 559.72(18).

11.     Further, the FCCPA provides that "a debtor may bring a civil action against a person violating the provision of s. 559.72 . . . and the court may award punitive damages . . . ." *See* Fla. Stat. § 559.77(2).

## TILA STATUTORY STRUCTURE

12.     The purpose of TILA is to promote the informed use of credit by consumers by requiring meaningful disclosure, however, is it is primarily a remedial statute, the objective of which is the provision of individual consumer rights. 15 U.S.C., § 1601(a); Bragg v. Bill Heard Chevrolet, Inc., 374 F.3d 1060, 1065 (11th Cir. 2004) ("[a]s a remedial statute, TILA must be construed liberally in favor of the consumer.") (internal citations omitted); *Begala v. PNC Bank, Ohio, N.A.*, 163 F.3d 948, 950 (6th Cir. 1998) ("[w]e have repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer.") (internal citations omitted).

13.     TILA imposes civil liability on a creditor that "fails to comply with any requirement imposed under this part . . . with respect to any person . . . ." *See* 15 U.S.C., § 1640(a).

3

## FCRA STATUTORY STRUCTURE

14.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

15.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.  *Id.* at § e(b) (emphasis added).

16.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

17.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

18.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's

file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

19.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

20.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

21.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorney fees.  *Id.* at § o.

## **GENERAL ALLEGATIONS**

22.     At all material times herein, TDB is a "creditor" as defined by the FCCPA and

TILA. *See* Fla. Stat., § 559.55(5); *see also* 15 U.S.C., § 1602(g).

23.    At all material times herein, Plaintiff is a "consumer" as defined by the FCCPA. *See* Fla. Stat., § 559.55(8).

24.    At all material times herein, Plaintiff is a "person," "consumer," and "card holder" as those terms are defined by TILA. *see also* 15 U.S.C., § 1602(e), (i), and (n).

25.    At all material times herein, TDB  is a "person" subject to the FCCPA and TILA. *See* Fla. Stat. § 559.55(5); *see also Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002); 15 U.S.C., § 1602(e) and (g).

26.    On or about March 30, 2018, Plaintiff entered into a relationship with TDB for the opening of a credit card account, identified by account number ending in -6475 (hereinafter, "Account").

27.    At all material times herein, TDB reports information concerning a consumer debt—including but not limited to, an alleged balance due from Plaintiff on the Account (hereinafter, the "Debt").

28.    At all material times herein, Plaintiff's TDB Account is an "open end consumer credit plan" as defined by TILA. *See* 15 U.S.C., § 1602(j).

29.    At all material times herein, Plaintiff's Account is a consumer account and was established primarily for Plaintiff's personal, family or household use.

30.    TDB's communications to Plaintiff, including but not limited to its May 15, 2020, debt collection letter that demanded payment on an alleged balance due on the Account (as defined further *infra*) qualifies as a "communication" as defined by the FCCPA.

31.    TDB's May 15, 2020 debt collection letter was a "claim, attempt, or threat[] to enforce a debt" as defined by Florida Statutes, Section 559.72(9).

32.     At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engage in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian, Equifax, and TransUnion disburse such consumer reports to third parties under contract for monetary compensation.

33.     At all material times herein, Defendants acted by themselves, or through their respective agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, lawyers and/or insurers.

34.     Plaintiff retained the Law Offices of Rick G. Bannon, P.A. and Swift, Isringhaus & Dubbeld, P.A. (collectively, "Undersigned Counsel") for the purpose of pursuing this action against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

35.     All necessary conditions precedent to the filing of this action occurred or have been waived by Defendants.

### FACTUAL ALLEGATIONS

### Creation of the Account

36.     On or about March 30, 2018, Plaintiff entered into written terms establishing a relationship with TDB for the opening of the Account. Please see attached a true and correct copy of the Credit Card Agreement labeled as "Exhibit A."

37.     As a result of opening the Account, TDB issued Plaintiff a "credit card" as that term is defined by TILA. *See* 15 U.S.C., § 1602(l).

### Unauthorized Fraudulent Usage of the Plaintiff's Account

38.     On or about December 15, 2019, TDB called Plaintiff via telephone and advised

TDB of the suspected fraud in relation to his Account.

39.     The alleged fraud was in relation to a charge for $1,700.00 by "GROUPON INC."

40.     Plaintiff confirmed to TDB on the telephone call that the $1,700.00 charge by "GROUPON INC" was not authorized and was fraudulent ("Fraudulent Charge").

41.     The Fraudulent Charge was an "unauthorized use" as that term is defined by TILA. *See* 15 U.S.C., § 1602(p).

42.     Specifically, neither Plaintiff nor any person with actual, implied, or apparent authority initiated the Fraudulent Charge and Plaintiff received no benefit from the Fraudulent Charge.

### **TDB's Investigation and Disposition**

43.     On December 20, 2019, TDB sent Plaintiff two letters ("December Letters"). Please see attached a true and correct copy of the letters attached as "Composite Exhibit B."

44.     The December Letters acknowledged "receipt of [Plaintiff's] report of fraudulent activity" on the Account, requested the return of a "Declaration of Fraudulent Activity," advised that Plaintiff's Account would be credited, and asserted that TDB would undertake an investigation. *See* Comp. Ex. B.

45.     Plaintiff did, in fact, return the requested paperwork to Defendant.

46.     On January 30, 2020, TDB sent Plaintiff a letter advising that, as a result of its investigation, Defendant's position was that  the Fraudulent Charge was legitimate and authorized, that Plaintiff was financially responsible for the Fraudulent Charge, and that the provisionally-issued credit to the Account in the amount of the Fraudulent Charge would be reversed ("January Letter"). Please see attached a true and correct copy of the January Letter attached as "Exhibit C."

47.     Within a week of Plaintiff's receipt of the January Letter, Plaintiff called TDB and again advised TDB that the Fraudulent Charge was illegitimate and to discuss the January Letter.

48.     On or about February 15, 2020, TBE re-applied the Fraudulent Charge to Plaintiff's Account.

49.     On May 15, 2020, TDB sent a letter to Plaintiff (hereinafter, "Collection Letter"). Please see attached a true and correct copy of the Collection Letter attached as "Exhibit D."

50.     The Collection Letter was sent in an attempt to collect the Debt (inclusive of the Fraudulent Charge).

51.     To date, Plaintiff's Account has never been reimbursed for the Unauthorized Transfers.

## Plaintiff's Disputes to Equifax, Experian, and Trans Union

52.     On or about October 1, 2020, Plaintiff obtained a copy of his consumer disclosures from Equifax, Experian, and Trans Union (hereinafter, "Credit Reports").

53.     Despite having informed TDB that the Account's balance was incorrect and comprised entirely of a single unauthorized charge, TDB falsely reported the Account associated with the Debt bore: (1) a balance due in the amount of $1,700.00; (2) a status of "over 120 days past due;" (3) a date of first delinquency of May 1, 2020;" and (4) an amount past-due of $329.00.

54.     The tradeline associated with the TDB Account and the Debt should have instead shown that the Account had (1) a balance of $0.00; (2) a status of "pays as agreed;" (3) no date of first delinquency; and (4) no amount past due.

55.     On or about October 8, 2020, legal counsel—on behalf of Plaintiff—sent a letter

to Equifax, Experian, and Trans Union (without courtesy copy to TDB) disputing the immediately-aforementioned inaccurate reporting of the TDB Account (hereinafter, "Dispute").

56.    Equifax, Experian, and Trans Union each received Plaintiff's Dispute and communicated the same to TDB.

57.    On or about November 2, 2020, Experian issued its resolution of Plaintiff's Dispute.

58.    Despite Plaintiff's Dispute to Experian detailing the inaccuracies of the reporting of the Account, Experian did not correct the disputed inaccurate information.

59.    The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

60.    As a result of the inaccurate reporting of the Debt on Plaintiff's Credit Reports, Plaintiff was continually evaluated for credit using consumer reports that inaccurately reported the Debt.

61.    Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, loss of sleep, and confusion, believing that despite the fact that the Debt was the result of unauthorized use of the Account, and despite Plaintiff's dispute efforts, Plaintiff must endure the erroneous and inaccurate reporting of the Debt.

62.    Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would continue to be denied credit as a result of the erroneous and incorrect reporting of the Debt and that Plaintiff would instead pay higher interest rates in the event he could obtain financing.  Plaintiff suffered additional actual damages in the form of damage to his reputation,

higher credit costs, and other additional costs and fees.

63.     Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

64.     Title 15, United States Code, Section 1640(a) provides for the award of actual damages, statutory damages equal to twice the finance charge in connection with the disputed transaction, with a minimum of $500.00 and maximum of $5,000.00[1], and an award of reasonable attorneys' fees and costs to Plaintiff should Plaintiff prevail in this matter against Defendant.

**COUNT ONE:**
**VIOLATION OF THE TRUTH IN LENDING ACT—**
**VIOLATIONS OF 15 U.S.C. § 1693g(a), (e)**

65.     Plaintiff re-alleges paragraphs one (1) through sixty-four (64) as if fully restated herein and further states as follows.

66.     TDB is subject to, and violated the provisions of, 15 United States Code, Sections 1693g(a) and g(e) for its assertion of liability upon Plaintiff of amounts above that which are authorized by the EFTA for the Unauthorized Transfers.

67.     Plaintiff was the victim of multiple unauthorized electronic fund transfers (i.e., Unauthorized Transfers).

68.     In such circumstances, Plaintiff's liability is limited. 15 U.S.C., § 1693g.

69.     More specifically, under Section 1693g(a), a consumer's liability for an unauthorized transfer cannot exceed the lesser of $50.00 or the amount of the money obtained in such unauthorized transfer. *Id.* at g(a)(1)-(2).

---

[1] The Court may award more than $5,000.00 in statutory damages as it deems appropriate in the case of an established patten or practice. 15 U.S.C., §1640(a)(2)(A)(i).

70.     Further, the full extent of Plaintiff's entire liability for the Unauthorized Transfers is limited to those sums. *Id.* at g(e) ("[e]xcept as provided in this section, a consumer incurs no liability from an unauthorized electronic fund transfer.").

71.     In order to assert full liability against Plaintiff, as claimed by TDB, TDB bears the burden to establish that the subject transfer(s) were authorized or, if they were unauthorized, then Defendant bears the burden to establish the conditions of liability have been met. *Id.* at 1693g(b); *see also Ognibene v. Citibank, N.A.*, 112 Misc. 2d 219, 446 N.Y.S. 2d 845 (Civ. Ct. 1981) ("[t]o establish full liability on the part of the consumer, the bank must prove that the transfer was authorized. To be entitled to even the limited liability imposed by the [EFTA] on the consumer, the bank must prove that certain conditions of consumer liability, set forth in 15 U.S.C.A. 1693g(a) have been met and that certain disclosures mandated by 15 U.S.C.A. 1693c(a)(1) and (2) have been made.").

72.     Because Plaintiff is the victim of theft and because he retained no benefit from the Unauthorized Transfers, his liability for each of the unauthorized electronic fund transfers making up the Unauthorized Transfers is limited to, at most, $50.00.

73.     Despite having actual knowledge of the fraud and Unauthorized Transfers, TDB failed to limit Plaintiff's liability for each of the unauthorized electronic fund transfers making up the Unauthorized Transfers to $50.00.

74.     More specifically, to date, TDB has not credited Plaintiff's Account for any amounts making up the Unauthorized Transfers.

75.     As such, TDB has violated 15 United States Code, Section 1693g(a) and (e) by asserting Plaintiff's liability for the Unauthorized Transfers is above what is lawfully allowed.

76.     As a direct and proximate result of TDB's actions, Plaintiff has sustained damages as defined by 15 United States Code, Section 1693m.

## COUNT TWO:
## FLORIDA CONSUMER COLLECTION PRACTICES ACT—
## <u>VIOLATIONS OF FLORIDA STATUES, SECTIONS 559.72(7) and (9)</u>

77.     Plaintiff re-alleges paragraphs one (1) through sixty-four (64) as if fully restated herein and further states as follows.

78.     TDB is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) on the basis of its May 15, 2020 Collection Letter which sought to collect $1,700.00 in unauthorized charges applied to Plaintiff's Account.

79.     More specifically, the Collection Letter was a willful communication by TDB to Plaintiff that could reasonably be expected to harass after Plaintiff had provided repeated notices to TDB that the sum TDB sought to collect in the Collection Letter was exclusively attributable to an unauthorized transaction.

80.     TDB is also subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) on the basis of its May 15, 2020 Collection Letter which was a claim, attempt, or threat to enforce the Debt on the Account made by TDB despite TDB's knowledge that it had no right to enforce the unauthorized transaction that comprised the Debt on the Account against Plaintiff.

81.     As a direct and proximate result of TDB's actions, Plaintiff sustained actual and statutory damages as defined by Florida Statutes, Section 559.77.

## COUNT THREE:
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>

82.     Plaintiff re-alleges paragraphs one (1) through sixty-four (64) as if fully restated herein and further states as follows.

83.     Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

84.     Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the accounts identified herein.

85.     Specifically, even though the Account's balance, status, date of first delinquency, and amount past due were completely the return of fraudulent unauthorized activity, Experian, incorrectly reported adverse and incorrect information concerning the accounts identified herein, as noted herein.

86.     Further, Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Experian credit report.

87.     For example, despite Plaintiff's disputes of the Account's balance, status, date of first default, and amount past due, Experian did not undertake any investigation to determine whether the Account's lone allegedly delinquent charge that comprised the entire balance, was fraudulent.

88.     Such reporting of the Account's balance, status, date of first default, and amount past due identified herein is false and evidences Experian's failure to establish or follow

reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

89.     Importantly, Experian possessed actual knowledge of Plaintiff's Dispute of the Account's balance, status, date of first default, and amount past due as the exclusive product of unauthorized use, as described in Plaintiff's Dispute. Notwithstanding, Equifax, Experian, and Trans Union failed to correct the Account, even after Plaintiff's Dispute.

90.     Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

91.     Experian's violations of 15 United States Code, Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT FOUR:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)**

92.     Plaintiff re-alleges paragraphs one (1) through sixty-four (64) as if fully restated herein and further state as follows.

93.     Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit file.

94.     Specifically, Experian willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's Dispute, as described herein.

95.     For example, despite Plaintiff's disputes of the Account's balance, status, date of

first default, and amount past due, Experian did not undertake any investigation to determine whether the Account's lone allegedly delinquent charge that comprised the entire balance, was fraudulent.

96.    As noted above, even though the Account's alleged balance, status, date of first default, and amount past due were the product of unauthorized use of the Account, Experian failed to conduct any meaningful investigation and instead continued to inaccurately report the Account with an incorrect balance, status, date of first default, and amount past due.

97.    Such reporting is false and evidences Experian's failure to conduct reasonable re-investigations of Plaintiff's Dispute.

98.    Experian's reinvestigations of Plaintiff's Dispute were not conducted reasonably.

99.    Experian's reinvestigations merely copied and relied upon the inaccurate account information conveyed by TDB.

100.    Experian's reinvestigations of Plaintiff's Dispute were not conducted in good faith.

101.    Experian's reinvestigation procedures are unreasonable.

102.    Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian.

103.    Experian's reinvestigations were *per se* deficient by reason of these failures in Experian's reinvestigations of Plaintiff's disputes and the Account.

104.    Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)**

105.    Plaintiff re-alleges paragraph one (1) through sixty-four (64) as if fully restated herein and further states as follows.

106.    Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's Disputes, including all relevant attachments.

107.    Specifically, despite receiving Plaintiff's Dispute that advised that the Account's alleged balance, status, date of first default, and amount past due were the product of unauthorized use of the Account, Experian willfully and/or negligently failed to review and consider all information received in Plaintiff's Dispute about the Account.

108.    Experian's failure to review and consider all information received in Plaintiff's Disputes was done in bad faith.

109.    Experian's actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 USC, Sections 1681n or 1681o, or both.

**COUNT SIX:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)**

110.    Plaintiff re-alleges paragraphs one (1) through sixty-four (64) as if fully restated herein and further states as follows.

111.    Experian is subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete any information that was the subject of

Plaintiff's Dispute as inaccurate or that could not be verified.

112.    Specifically, despite receiving Plaintiff's Dispute, that advised that the Account's alleged balance, status, date of first default, and amount past due were the product of unauthorized use of the Account, Experian willfully and/or negligently failed to update or delete the information on Plaintiff's credit reports with respect to the Account that was either inaccurate and could not be verified.

113.    Experian's actions were a direct and proximate cause of, as well as a substantial factor in, Plaintiff's serious injuries, damages, and harm as more fully stated herein.

114.    Experian's actions in violation of 15 United States Code, Section 1681i(a)(5), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 USC, Sections 1681n or 1681o, or both.

**COUNT SEVEN:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**

115.    Plaintiff re-alleges paragraphs one (1) through sixty-four (64) as if fully restated herein and further states as follows.

116.    TDB is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's Credit Reports, failing to fully and properly re-investigate Plaintiff's Dispute, failing to review all relevant information regarding the same, and failing to correctly report the Account on Plaintiff's Credit Reports after re-investigating Plaintiff's Dispute.

117.    As described above, despite receiving notice of Plaintiff's Dispute, TDB willfully and/or negligently reported inaccurate credit information regarding the Account to Experian. Specifically, after receiving notice of Plaintiff's Disputes and possessing actual knowledge that that the Account's alleged balance, status, date of first default, and amount past due were the product of unauthorized use of the Account and did not represent transactions incurred by Plaintiff, TDB inaccurately reported the Account's balance, status, date of first default, and past due amount inaccurately.

118.    Each of the immediately-aforementioned inaccuracies ultimately reflected negatively and adversely on Plaintiff's Experian Credit Report and credit files.

119.    Further, TDB reported and communicated the immediately-aforementioned inaccurate information with actual knowledge that the Account contained balance, status, delinquency date, and past due information that were the direct result of unauthorized use of the account and transactions not incurred by Plaintiff.

120.    TDB's re-investigation was not conducted in good faith.

121.    TDB's re-investigations were not conducted reasonably.

122.    TDB's re-investigations were not conducted using all information reasonably available to TDB.

123.    As a result of TDB's conduct, actions, or inactions, Plaintiff was unable to obtain or maintain credit at market rates and terms for individuals who did not have outstanding, late, or past-due balances reported on their credit reports.

124.    TDB's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

125.    TDB's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's actions and conduct, Plaintiff respectfully requests entry of:

a.    Judgment against TDB for maximum statutory damages for violations of the EFTA, FCCPA, and FCRA;

b.    Judgment against TDB for actual and/or treble damages for violations of the EFTA in an amount to be determined at trial;

c.    Judgment against Defendants for maximum statutory damages for violations of the FCRA;

d.    Judgment against Defendants enjoining Defendants from engaging in further conduct in violation of the FCCPA and FCRA;

e.    Actual damages in an amount to be determined at trial;

f.    Compensatory damages in an amount to be determined at trial;

g.    An award of reasonable attorneys' fees and costs; and

h.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

126.    Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

127.    Plaintiff hereby gives notice to Defendant and demands that it, and its affiliates,

safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD P.A.**

/s/ *Jordan T. Isringhaus* **(TRIAL COUNSEL)**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Aaron M. Swift, Esq., FBN 0093088**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
10460 Roosevelt Blvd. North, Suite 313
St. Petersburg, FL 33703
Phone: (813) 563-8466
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
*Co-Counsel for Plaintiff*

and

**LAW OFFICES OF RICK G. BANNON, P.A.**

/s/ *G. Tyler Bannon*
**G. Tyler Bannon, Esq., FBN 0105718**
1901 Dr. M.L. King Jr. Street N.
St. Petersburg, FL 33704
Phone: (727) 896-4455
Fax: (727) 895-1312
tyler@rbannonlaw.com
jbannon@rbannonlaw.com
*Co-counsel for Plaintiff*

21