UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOWARD BRAUN,

        Plaintiff,    Case No.: 8:20-cv-2951-T-33TGW

v.

TD BANK, N.A. and EXPERIAN
INFORMATION SOLUTIONS,
INC., a foreign for-profit corporation,

        Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT TD BANK, N.A.'S MOTION TO DISMISS**

**COMES NOW**, Plaintiff, HOWARD BRAUN (hereinafter, "Plaintiff"), by and through undersigned counsel, and hereby files this Response in Opposition to Defendant TD BANK, N.A.'s (hereinafter, "Defendant" or "TDB") Motion to Dismiss Plaintiff's Amended Complaint (hereinafter, "Motion to Dismiss") (Dkt. 31). In support thereof, Plaintiff states as follows:

**I.     INTRODUCTION AND PROCEDURAL BACKGROUND**

In this action, Plaintiff alleges that he was the victim of fraud on his TDB credit card which resulted in a single $1,700.00 Groupon charge that was false and unauthorized. Plaintiff alleges that after he informed TDB of the issue and disputed the same with credit reporting agencies, TDB failed to limit his liability within

TILA's limits, verified inaccurate, incomplete, or false credit information in violation of the FCRA, and subjected him to illegal debt collection activity on the fraudulent $1,700.00 balance, in violation of the FCCPA.

On December 14, 2020, Plaintiff filed his original *Complaint*. Dkt. 1. On February 22, 2021, Plaintiff filed his *Amended Complaint*. Dkt. 26. On March 8, 2021, TDB filed its *Motion to Dismiss and Incorporated Memorandum of Law*. Dkt. 31. For the reasons detailed below, TDB's *Motion to Dismiss* should be denied.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *see also Iqbal*, 129 S.Ct. at 1949. Dismissal is appropriate only if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *See Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974. The purpose of the complaint is to apprise the defendant of "what the claim is and the grounds upon which it rests." *See Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010) (internal quotation omitted).

A plaintiff need only do what is necessary to satisfy what the Eleventh Circuit called a "liberal pleading standard." *Id.*

"When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted." *Holtzman v. B/E Aerospace, Inc.*, 2008 WL 214715, at *1 (S.D. Fla. Jan. 24, 2008). The court's examination is limited to the four corners of the complaint. *Keating v. City of Miami*, 598 F.3d 753, 761 (11th Cir. 2010); *Homes By Deramo, Inc. v. Mid-Continent Cas. Co.*, 661 F. Supp. 2d 1281, 1288 (M.D. Fla. 2009); *Toyota Tsusho Am., Inc. v. NSC Alliance LLC*, 2010 WL 556316, * 4 (S.D. Fla. Feb. 22, 2010) (noting that arguments that rely on matters outside of the pleading are impermissible on a motion to dismiss under Rule 12(b)(6)); *Seoul Broad. Sys. Int'l, Inc.*, 2010 WL 2035137, *2 (M.D. Fla. May 21, 2010) (stating "[w]hen ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'").

Lastly, the district court is required to view the complaint in the light most favorable to the plaintiff. *Murphy v. Federal Deposit Ins. Corp.*, 208 F. 3d 959, 962 (11th Cir. 2000). Here, Plaintiff satisfies the liberal pleading standard and

adequately apprises TDB of what Plaintiff's claims are and the grounds upon which such claims rest, especially when viewed in the light most favorable to Plaintiff.

### III. ARGUMENT AND MEMORANDUM OF LAW

In its *Motion to Dismiss*, TDB seeks to defeat Plaintiff's Counts I, II and VII of Plaintiff's *Amended Complaint* which arise under the Truth in Lending Act, Florida Consumer Collection Practices Act, and Fair Credit Reporting Act, respectively.

TDB's argument against Plaintiff's TILA count primarily consists of hypothesized questions that TDB claims must be answered by Plaintiff's pleading. By posing such questions, TDB then incorrectly claims that its' questions must be answered at the pleading stage, despite no authority in support of TDB's position.

In TDB's opposition to Plaintiff's FCCPA count, TDB takes the position that its letter (Dkt. 26-4), which indisputably stated, "please send your payment right away" and "your account is 30-days past due" and "[t]his is an attempt to collect a debt," is in fact not a sufficiently alleged communication in an attempt to collect a debt.

Finally, TDB incorrectly asserts that Plaintiff's FCRA count fails due to a lack of clarity, failure to plead damages and, presumably, on the basis of several cited but non-analyzed and inapplicable cases.

Plaintiff's well-pleaded allegations state claims for relief under the TILA,

FCCPA, and FCRA against TDB. Moreover, TDB has not shown—beyond a doubt—that Plaintiff's *Amended Complaint* could prove no set of facts, which, if true, would entitle Plaintiff to relief. As such, Plaintiff respectfully requests that TDB's *Motion to Dismiss* be denied.

### A. Plaintiff Has Sufficiently Pled his TILA Claim Despite TDB's Unsupported Request for Additional Facts

TDB's first, and shortest, argument in favor of dismissal claims that "[Plaintiff] does not set forth a single fact that plausibly establishes the disputed charge was actually unauthorized." *See* Dkt. 31, p. 5 (internal quotations omitted). TDB theorizes that Plaintiff's TILA claim must allege supplemental incidents such as "card information was compromised in a data breach or hack" or "someone with access to his card used it without his permission." *Id.* at p. 6. TDB sets forth no case law to support that such allegations are necessary to properly plead a claim under TILA.

Reduced to its simplest form, TDB's unsupported argument is merely that additional facts are necessary to satisfy *Twombly*, not that the circumstances of fraudulent credit card usage explicitly described in the *Amended Complaint* fail to give rise to a claim under TILA. Although TBD states that no "plusibl[e]" claim is stated, the only basis of that argument is the allegedly incomplete factual pleading.

Under the operative notice pleading standard, "a complaint [must] contain either *direct or inferential allegations* respecting all the material elements necessary

to sustain a recovery. . ." *See Ross v. Option One Mortg. Services, Inc.*, 2008 WL 384440, *1, *3 (M.D. Fla. 2008) (emphasis added).

Plaintiff's TILA claim asserts that his liability for an unauthorized charge on his TDB credit card was limited to $0.00 (or at most $50.00), but that TDB refused to recognize such limitation and continues to assert that Plaintiff is liable for a single fraudulent $1,700.00 charge. *See* Dkt. 26, p. 14-16.

Under TILA, a credit card holder's liability is limited in cases of "unauthorized use." *See* 15 U.S.C. § 1643. The terms "credit card," "card holder," and "unauthorized use" are defined by TILA. *Id.* at § 1602(n);(l);(p).

### i. Plaintiff Has Properly Pled the Existence of a Credit Card Governed by TILA and that He Was a Cardholder

TILA defines a credit card as "any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit." *Id.* at § 1602(l). In the *Amended Complaint*, Plaintiff alleged that on or about March 30, 2018, he entered into a written agreement with TDB establishing the terms for a credit card account. *See* Dkt. 26, p. 9-10. Plaintiff's *Amended Complaint* further attached the operative credit card agreement for the credit card at issue and such terms, taken as true, indicate the existence of a "personal credit card." *See* Dkt. 26-1, p. 1.

The TILA defines "cardholder" as "any person to whom a credit card is issued…" *See* 15 U.S.C. 1602(n). Plaintiff has pled that TDB issued him a credit

card.  *See* Dkt. 26, p. 10 ("As a result of opening the Account, TDB issued Plaintiff a "credit card…").  By the same allegation, Plaintiff also sufficiently stated that TDB was the "card issuer," the same being defined by TILA as "any person who issues a credit card . . . "  *Id*. at (o).

Due to Plaintiff's pleading of facts concerning the existence of a credit card between Plaintiff and TDB, Plaintiff has sufficiently pled that TILA applies to his credit card relationship with TDB.

### ii. Plaintiff Has Properly Pled the Existence of Unauthorized Use of his Credit Card

TILA's statutory definition of "unauthorized use" is "use of a credit card by a person other than the card holder who does not have actual, implied, or apparently authority for such use and from which the cardholder receives no benefit."  *See* 15 U.S.C. § 1602(p).  Despite TDB's allegation that "[Plaintiff] does not set forth a single fact that plausibly establishes the disputed charge was actually unauthorized,"[1] the *Amended Complaint* is replete with direct and permissible inferential allegations supporting the same, for example:

- A description that the unauthorized charge was first discovered by TDB's telephone call to Plaintiff notifying him that "[it] suspected fraud in relation to [the] Account." *See* Dkt., 26, p. 10.

- Description of the merchant and amount of the allegedly unauthorized charge. *Id*.

---

[1] *See* Dkt. 31, p. 5

- Express allegation that: "Plaintiff confirmed to TDB on the telephone call that the $1,700.00 charge by GROUPON INC **was not authorized and was fraudulent.**" *Id*. (emphasis added).

- Allegation that neither Plaintiff, nor anyone with his consent, authorized the charge and that Plaintiff received no benefit from the charge. *Id*.

- Allegation that Plaintiff called TDB after its' "investigation" to dispute the results and "**again advise[] TDB that the Fraudulent Charge was illegitimate . . .**" *Id*. at p. 1 (emphasis added).

- Direct allegation that, "Plaintiff was the **victim of unauthorized use** of his Account." *Id*. at p. 15 (emphasis added).

The aforementioned allegations set forth facts sufficient to directly allege and indirectly infer that Plaintiff and TDB were parties to a credit card relationship and that the credit card was used in a manner that satisfies TILA's definition of "unauthorized use."

TDB's contention that additional facts are necessary to plead a TILA claim of limited liability is untenable, for example: if TDB were correct, no consumer TILA action would be viable unless a consumer could identify the means by which a thief—who almost certainly remains unknown—committed an unauthorized transaction. TILA is a "remedial statute [that] must be construed liberally in favor of the consumer." *See Bragg v. Bill Heard Chevrolet, Inc*., 374 F. 3d 1060, 1065 (11th Cir. 2004). TILA's remedial, consumer-centric focus is further clarified by its requirement that if an institution wishes to impose non-limited liability on a

consumer for a disputed fraudulent transaction, *the institution* bears the burden to establish that the allegedly unauthorized transfer was in fact authorized (i.e., it is not the consumer's duty to prove the transaction was unauthorized). *See* 15 U.S.C. § 1643(b) ("In any action by a card issuer to enforce liability for the use of a credit card, the burden of proof is upon the card issuer to show that the use was authorized . . . .").

To accept TDB's assertion that the victim of an unauthorized transaction can only state a claim for limited liability under TILA by speculating as to the means by which a thief committed an unauthorized transaction is illogical, unworkable, would create a heightened pleading standard exceeding *Twombley*, all while also turning the TILA's unauthorized usage limitation on its head. Plaintiff requests that the Court deny TDB's *Motion to Dismiss* in relation to the TILA count.

      **B.**    **Plaintiff Has Sufficiently Alleged that TDB's Letter was an Attempt to Collect the Debt**

In its second argument in favor of dismissal, TDB states that the letter alleged in the *Amended Complaint* (*See* Dkt. 26-4)—which contains a request for minimum payment and threat of adverse credit reporting if the same is not rendered—is not an act of debt collection subject to the FCCPA. *See* Dkt. 31, p. 6-8. The argument strains credulity and disregards the law.

First, TDB claims that the letter at issue in Plaintiff's FCCPA claim is not a communication in connection with the collection of a debt. *Id*. at p. 7. TDB then

cites to three cases in which letters were held to not be in connection with the collection of a debt, none of which are applicable here.

TDB first relies upon *Farquharson v. Citibank, N.A.*, 664 Fed. Appx. 793 (11th Cir. 2016). *See* Dkt. 31, p. 7. In *Farquharson*, the 11th Circuit upheld dismissal of an FDCPA claim where the letter at issue concerned only the ability to opt-in to a trial period mortgage loan modification. *See Farquharson v. Citibank, N.A.*, 664 Fed. Appx. 793, 801. The 11th Circuit held that the letter was not a communication to collect a debt because "it merely offered [p]laintiffs this option if they chose to make future payments [and] the letter did not indicate that any punitive actions would be taken if Plaintiffs failed to make payments, nor did it describe any collection efforts apart from the [trial modification] Plan process itself." *Id*.

In its *Motion to Dismiss*, TDB does not analyze *Farquharson* but only provides a citation. *See* Dkt. 31, p. 7. The *Farquharson* letter is materially different than TDB's letter. *Farquharson* concerned a letter about a potential mortgage note modification that made no request for payment and no threats of future adverse action for non-compliance. Here, TDB's letter at issue in Plaintiff's FCCPA claim clearly: (1) demands that Plaintiff "please send your payment right away;" (2) states that "your account is 30-days past due;" (3) warns that "we're required to notify the credit reporting agencies that your account is delinquent," and (4) threatens future consequences for non-payment—namely—that "to avoid further adverse reporting

on your consumer credit file, please send your payment." *See* Dkt. 26-4. By its demand for payment, statement that the account is delinquent, warning of current consequences and future consequences of non-payment, TDB's letter attached to the *Amended Complaint* qualifies as debt collection sufficient to state a claim under the FCCPA.

Next, TDB cites to *Reese v. Ellis, Painter, Raterree & Adams, LLP*, 678 F. 3d 1211 (11th Cir. 2012) and *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299 (11th Cir. 2014). *See* Dkt. 31, p. 7. Each case is offered in support of an argument that a communication is only in connection with the collection of a debt where the communication demands full and immediate payment, threatens the addition of attorneys' fees, and states that letter is for purposes of collecting a debt. *Id*. TDB argues that its letter is not debt collection because it "state[s] simply that TD has not received the minimum payment in the amount of $176.00 … the account is past due, and that the account will be reported to credit reporting agencies if the payment is not made." *Id*. Most incredibly, TDB also argues that **"the letter did not demand payment, it did not indicate that any punitive actions would be taken if Plaintiff failed to make the minimum payment** . . ." *Id*. (emphasis added).

TDB's contention that its letter's clear phrase "*please send your payment right away*" does not demand payment is completely incredible, patently incorrect and stretches the bounds of good faith argument. *See* Dkt. 31, p. 7; Dkt. 26-4 (emphasis

added).  This is especially true in light of the letter's stand-alone facial declaration that "*This is an attempt to collect a debt [] Any information obtained will be used for that purpose.*"  See Dkt. 26-4 (emphasis added).

The cases cited by TDB miss the mark by either being completely inapplicable (in the case of *Farquharson*) or pre-dating and omitting the current operative test of whether a communication is in connection with the collection of a debt (in the cases of *Reese* and *Caceres*).  The operative test as to whether a communication is connection with the collection of a debt is set forth in *Goodin v. Bank of America, N.A.*, 114 F. Supp. 3d 1197 (M.D. Fla. 2015).  In *Goodin*, this Court held that "[t]o be in connection with the collection of a debt, a communication need not make an explicit demand for payment …[h]owever, **an animating purpose of the communication must be to induce payment by the debtor**."  See *Goodin v. Bank of America, N.A.*, 114 F. Supp. 3d 1197 (M.D. Fla. 2015) (internal quotations omitted, emphasis added).

Here, not only did TDB's letter explicitly demand payment by stating "please send your payment right away," it also advised of past and future negative consequences (i.e., negative credit reporting) that would result in the absence of payment.  See Dkt. 26-4.  Finally and most clearly, TDB's letter states that it "is an attempt to collect a debt." *Id*.  By pleading facts about TDB's letter[2] and attaching

---

[2] *See* Dkt. 26, p. 11-12.

the letter to his *Amended Complaint*, Plaintiff has alleged facts sufficient to support that the animating purpose of TDB's letter was to coerce Plaintiff into "send[ing] [his] payment" to "avoid further adverse reporting on [his consumer credit file]," all packaged within a communication that explicitly disclosed that it was "an attempt to collect a debt." *Id*.

Finally, as to TDB's concluding argument that, "[the] Amended Complaint contains no facts showing that TD Bank knew the Charge was not legitimate" (Dkt. 21, p. 8), TDB is again mistaken. First, Plaintiff alleges that TDB knew the unauthorized charge was not legitimate. *See* Dkt. 31, p. 17-18 ("Despite having actual knowledge of the fraud and Fraudulent charges, TDB [sent Plaintiff a collection letter asserting that Plaintiff owed $1,700]). Second, Plaintiff's *Amended Complaint* contextually explains that he only became aware of the fraud after TDB made a telephone call to him and communicated its knowledge that fraud was suspected in relation to the $1,700.00 charge. *See Id*. at p. 10. Plaintiff also pled that he provided TDB with a sworn "Declaration of Fraudulent Activity" and a subsequent verbal affirmation that he did not commit or authorize the $1,700.00 charge. *Id*. at p. 10-11.

In sum, TDB's *Motion to Dismiss* Plaintiff's FCCPA count should be denied because Plaintiff has sufficiently stated a cause of action by both alleging a communication in connection with the collection of a debt and alleging facts that

support and indicate TDB's actual knowledge of the unauthorized nature of the charge.

### C. Plaintiff Has Sufficiently Alleged an FCRA Claim against TDB

In opposition to Plaintiff's FCRA count, TDB argues that the FCRA claim "fail[s] to provide sufficient notice of, or a plausible case for, a violation of the FCRA." *See* Dkt. 31, p. 8.

After providing mostly irrelevant background concerning the FCRA, TDB's argument as to "sufficient notice" is set forth on pages 9-10 of its *Motion to Dismiss*. Specifically, TDB argues that "[Plaintiff] does not allege any facts that plausibly show how TD failed to conduct a reasonable investigation." *Id*. at p. 9. TDB mischaracterizes Plaintiff's claim by summarizing it as "Plaintiff sent a letter … then simply that TD Bank failed to comply with its duties under [the FCRA]." *Id*. at 9-10. In reality, Plaintiff's *Amended Complaint* sets forth additional comprehensive allegations concerning both the fraud, Plaintiff's dispute, and TDB's allegedly deficient investigation. *See* Dkt. 26, p. 12-14; 25-27.

To support its' argument, TDB appears to rely upon—but does not analyze or brief—*Leones v. Rushmore Loan Management Services, LLC*, 749 F. Appx. 897 (11th Cir. 2018). In *Leones*, a plaintiff filed an action against a loan servicer under the FCRA and claimed that her loan servicer's foreclosure complaint, which accelerated the full sum of her loan, meant that she no longer maintained a

continuing monthly payment obligation and as such any monthly payment delinquencies on her credit report were inaccurate. *Leones,* 749 F. Appx. 897, 901-902. Leones argued that the acceleration of her loan meant that she could no longer be reported as late on her monthly payments, because no monthly payments were due after acceleration. *Id*. at 899-900. The district court held and 11th Circuit affirmed that the FCRA claim was fatally flawed because "no dispute exist[ed] that the reported information [noting that the loan was in foreclosure and payments were not made] [was] accurate." *See Leones,* 749 F. Appx. 897, 901. As such in *Leones*, the existence of a foreclosure complaint accelerating the debt was not a document that altered the amount of Leones' monthly payment obligation. *Id*. ("[a]cceleration of the loan did not eliminate Plaintiff's loan payment obligations").

*Leones* cites to *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305 (11th Cir. 2018) in which the 11th Circuit held—at the summary judgment stage— that no FCRA violation could exist when a forbearance agreement did not legally modify the note on which Wells Fargo reported. *Id*. at 1313-1314. As such, Felts' forbearance agreement—similar to Leones' foreclosure complaint—were separate external documents that did not legally impact the status of the reported account. In short, the *Felts* and *Leones* Courts found no circumstances that changed the debtors' obligations to pay based on the terms of the underlying written agreements, and therefore, the corresponding credit reporting would not be inaccurate.

TDB's *Motion to Dismiss* does not explicitly argue that the factual fraud at issue in this case is similar to the *Leones* and *Felts* holdings and Plaintiff asserts that such argument is not raised and waived. However, due to TDB's bare citation to *Leones*, Plaintiff responds here in an abundance of caution. Unlike *Leones* and *Felts*, Plaintiff does not assert that the underlying written agreement was altered by a subsequent agreement or document; Plaintiff here asserts that the negative balance, status, default, and delinquency items were each inaccurate as they were the direct product of fraud on the account and not incurred by Plaintiff personally. *See* Dkt. 26, p. 25-26. Plaintiff allegations are simply not equivalent in any way to *Leones* and *Felts*.

Plaintiff also alleges that is it "unclear from the Amended Complaint whether plaintiff alleges that TD Bank failed to conduct any investigation [and] to the extent an investigation was conducted, it is unclear how the investigation failed to meet the requirements of the statute." *See* Dkt. 31, p. 10. As to this point, Plaintiff's FCRA count alleges that TDB undertook a deficient investigation, not that it failed to conduct any investigation. *See* Dkt. 26, p.25 ("TDB … fail[ed] to fully and properly re-investigate Plaintiff's Dispute, fail[ed] to review all relevant information regarding the same . . .").

TDB also argues that it is "unclear how the investigation failed to meet the requirements of the statute." See Dkt. 31, p. 10. Contrary to TDB's argument, the

*Amended Complaint* specifies that TDB failed to review all relevant information regarding the dispute. *See* Dkt. 26, p. 25. The FCRA requires a furnisher to review all relevant information. *See* 15 U.S.C. § 1681s-2(b)(B) ("After receiving [a dispute from a credit reporting agency, a furnisher shall] review all relevant information provided by the consumer reporting agency . . ."). To that end, Plaintiff also alleges that although he gave TDB "actual knowledge that the Account's entire alleged balance, status, date of first default, and amount past due were the product of unauthorized use of the Account and did not represent transactions incurred by Plaintiff," TDB disregarded the information and continued inaccurate reporting. *See* Dkt. 26, p. 25.

### i. Plaintiff Has Sufficiently Alleged Damages Under the FCRA

As a final and sub-part of its' argument against Plaintiff's FCRA count, TDB claims that the *Amended Complaint* "fail[s] to allege with any specificity facts that plausibly establish damages and causation." *See* Dkt. 31, p. 10. TDB cites several out-of-district cases in support of this sub-argument (*Morse v. USAA*, 2012 WL 6020090, *1 (D. Nev. 2012) and *Buechler v. Keyco, Inc.*, 2010 WL 1664226, *1 (D. Md. 2010)) however neither is applicable.

*Morse* concerned a complete failure to make any allegations of actual damage and is of no assistance in this matter. *See Morse*, 2012 WL 6020090, *1, *3. *Buechler* came to the Maryland district court on a motion to dismiss but, similar to

*Morse*, the plaintiff completely omitted any actual damage allegation. *See Buechler*, 2010 WL 1664226, *1, *2.

Similar to its' argument concerning the *Amended Complaint*'s TILA count, here TDB contends that Plaintiff must exceed *Twombley* and can only state an FCRA cause of action if his pleading answers hypothetical questions such as: "what his credit score was, what changed as a result of the reporting, or that anyone relied on the purported inaccurate reporting . . ." *See* Dkt., 31, p. 11. TDB cites two more out-of-district cases but neither support the argued-for heightened pleading standard or any contention that the speculative facts listed by TDB need be included in the claim. *Renniger v. ChexSystems*, 1998 WL 295497, *1 (N.D. Ill. 1998) merely held that no FCRA claim was stated against Equifax where Equifax's allegedly inaccurate data was not communicated. *Johnson v. CGR Services, Inc.*, 2005 WL 991770, *1, (N.D. Ill. 2005) is actually favorable to Plaintiff in that *Johnson* clearly states that the plaintiff in an FCRA claim "<u>does not need to plead her damages with heightened particularity</u> […h]owever, the complaint needs at least to give the other party some notice as to what her actual damages could possibly be." *See Johnson*, 2005 WL 991770, *1, *2 (emphasis added).

Plaintiff has fulfilled his pleading requirement by stating that TDB is liable for actual damages. *See* Dkt. *26*, p. 26. More specifically, Plaintiff has alleged that he "was unable to obtain or maintain credit at market rates and terms for individuals

who did not have outstanding, late, or past-due balances reported on their credit reports." *Id*. Further, because the term "actual damages" under the FCRA encompasses non-economic damages[3], Plaintiff's allegation of the same in the form of stress, anxiety, and hopelessness related to the inaccurate reporting (*See* Dkt. 26, p. 13-14) is also sufficient to place Defendant on notice and state an FCRA claim. At the pleading stage, Plaintiff's allegations of actual damage are sufficient to put TDB on notice as to the nature of actual damage.

Finally, although actual damages are pled here, an FCRA claim need not contain only actual damages because FCRA violators are also subject to statutory damages. *See Jones v. Salvation Army*, 2019 WL 6051437, *1, *3 (M.D. Fla. 2019). Plaintiff has pled that TDB is liable for statutory damages. *See* Dkt. 26, p. 27. Therefore, even if actual damages were not sufficiently pled, Plaintiff's FCRA claim would not be subject to dismissal for failure of any damages.

## IV.   CONCLUSION

Plaintiff's *Amended Complaint* contains well-pleaded factual allegations that must be taken as true regarding TDB violations of the TILA, the FCCPA, and the FCRA, and therefore TDB's *Motion to Dismiss* should be denied.

---

[3] *See Hunter v. ADP Screening and Selection Services, Inc*., 2016 WL 49992472, *1, *4) (M.D. Fla. 2016) ("The Eleventh Circuit has recognized, without deciding, that a plaintiff seeking actual or compensatory damages under the FCRA might be entitled to recover compensation for emotional distress" citing *Levine v. World Financial Network National Bank*, 437 F. 3d 1118 (11th Cir 2016).

Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD P.A.**

/s/ *Jordan T. Isringhaus*
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Aaron M. Swift, Esq., FBN 0093088**
10460 Roosevelt Blvd. North, Suite 313
St. Petersburg, FL 33703
Phone: (813) 563-8466
Fax: (727) 255-5332
jisringhaus@swift-law.com
*Counsel for Plaintiff*

and

**LAW OFFICES OF RICK G. BANNON, P.A.**

/s/ *G. Tyler Bannon*
**G. Tyler Bannon, Esq., FBN 0105718**
1901 Dr. M.L. King Jr. Street N.
St. Petersburg, FL 33704
Phone: (727) 896-4455
Fax: (727) 895-1312
tyler@rbannonlaw.com
jbannon@rbannonlaw.com
*Co-counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 19, 2021, I filed a true and correct copy of the above and foregoing *Plaintiff's Response in Opposition to Defendant TD Bank, N.A.s Motion to Dismiss* via CM/ECF which will electronically serve all parties and counsel of record.

/s/ *Jordan T. Isringhaus*
Attorney for Plaintiff